UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JUDY A. BRUMBAUGH,

        Plaintiff,   Case No.: 3:12-CV-309

vs.

COMMISSIONER OF   District Judge Walter H. Rice
SOCIAL SECURITY,   Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI"). This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 9), the Commissioner's Memorandum in Opposition (doc. 13), Plaintiff's Reply (doc. 14), the administrative record,[2] and the record as a whole.

## I.  BACKGROUND

### A.  Procedural History

Plaintiff filed for SSI on February 26, 2007, alleging a disability onset date of June 1, 2005. Tr. 27. Plaintiff claims she is disabled due to a number of impairments including degenerative disc disease of the cervical spine and Parkinson's Disease. Tr. 29.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

After initial denials of her applications, Plaintiff received a hearing before ALJ David Redmond. Tr. 566-84. ALJ Redmond issued a written decision on May 20, 2010 finding Plaintiff not "disabled." Tr. 27-36. Specifically, ALJ Redmond's Findings were as follows:

1. The claimant has not engaged in substantial gainful activity since February 26, 2007, the application date (20 CFR § 416.971, *et seq.*);

2. The claimant has the following severe impairments: degenerative disc disease of the cervical spine and Parkinson's Disease (20 CFR § 416.920 (c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.925 and 416.926);

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR § 416.967(b) except that she is limited to lifting a maximum of 10 pounds, is limited to occasional fingering with either hand, cannot work at unprotected heights, around moving machinery, or other dangerous instrumentalities, and is limited to minimal personal contacts. [3]

5. The claimant is unable to perform any past relevant work (20 CFR § 416.965); [4]

---

[2] Hereafter, citations to the administrative record will refer only to the transcript page number as "Tr." Additionally, Plaintiff's pertinent medical records have been adequately summarized in her Statement of Errors and the administrative decision, *see* doc. 9 at PageID 59-68 and tr. 27-36, and the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

[3] A claimant's RFC is the most physical exertion a claimant can perform in the workplace despite his or her impairments and any related symptoms, such as pain. 20 C.F.R. § 416.945(a). The assessment is based on all relevant evidence in the record and the claimant's ability to meet the physical, mental, sensory, and other requirements for work as described in 20 C.F.R. § 416.945(b), (c), and (d).

[4] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or…sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

6. The claimant was born on June 25, 1963, and was 43 years old at the time of the hearing, which defines her as a younger individual, age 18-49, on the date the application was filed (20 CFR § 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR § 416.964);

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR § 416.968);

9. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR § 416.969, and 416.969(a)); and

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 26, 2007, the date the application was filed (20 CFR § 416.920(g)).

Tr. 29-36 (brackets and footnote added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. Tr. 24-26; *see Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this timely appeal on September 18, 2012.

**B. Plaintiff's Hearing Testimony**

At the administrative hearing, Plaintiff testified before the ALJ that she is forty-seven years old, weighs 230 pounds, and completed the tenth grade. Tr. 569, 571. Plaintiff stated that she lives with her husband and brother-in-law. *Id*. She has never held a driver's license. Tr. 570. Plaintiff stopped working in 2003 when she was laid off, and has not worked since. Tr. 571.

Plaintiff testified that she experiences pain in her legs. Tr. 577. She walks slowly, and is limited to standing or walking for up to fifteen minutes at a time. Tr. 577-79. She also testified that she can sit for twenty minutes at a time, but sitting in a chair causes leg pain. Tr. 577.

Plaintiff testified that her lifting capabilities are limited to "about a gallon of milk," but that her hands are "shaky." Tr. 579.  Plaintiff experiences shaking in both hands and is able to write, but she has difficulty grasping and using a writing instrument.  *Id.*  She also testified that she has difficulty manipulating buttons or tying laces on her shoes, and requires assistance when getting dressed.  *Id.*  Plaintiff recently developed swelling in her legs.  Tr. 580.  The swelling is intermittent, and is exacerbated by extended periods of standing.  *Id*.  Plaintiff testified that she has difficulty concentrating, and is easily distracted.  *Id*.

On a typical day, Plaintiff does light household chores, watches television, and goes to bed around 11:00 p.m.  Tr. 578.  Plaintiff testified that she can perform household chores only with the assistance of her husband.  Tr. 577.  She is able to cook simple dishes and load the washing machine, but is unable to load clothes into the dryer.  Tr. 578.  Although Plaintiff attends church occasionally, she sits in the back of the congregation so that she can stand up periodically as needed.  Tr. 581.

### C.  Medical Expert Testimony

Hershel Goren, M.D., a medical expert ("ME"), also testified at the hearing after reviewing Plaintiff's medical records.[5]  Tr. 571.  The ME testified that Plaintiff has Parkinson's Disease, first diagnosed in 2007 by Bassel F. Shneker, M.D., and confirmed in a letter from John Novak, M.D. in December of that same year.  Tr. 572.  The ME related the symptoms of

---

[5] There are three types of medical sources: non-examining sources; non-treating (but examining) sources; and treating sources. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).  Dr. Goren is a non-examining source.  As a general matter, an opinion from a treating source is given the most weight (and possibly controlling weight if certain criteria are satisfied), and an opinion from an examining source is given more weight than that from a non-examining source.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  In weighing all medical opinions, the ALJ must consider the following factors: the examining relationship (if any); the length, nature and extent of the treatment relationship (if any); supportability of the opinion; consistency of the opinion with the record as a whole; the specialization of the source; and any other relevant factors which tend to support or contradict the opinion.  *Id.*; *see also* 20 C.F.R. § 404.1527(c).

Parkinson's Disease, such as slurred speech, tremors, and fatigue. Tr. 575-76. The ME also testified that Plaintiff was treated with standard Parkinson's medicines, and that the record reflected her condition had somewhat improved. Tr. 572. The ME acknowledged, however, that such treatments have side effects such as drowsiness, low blood pressure, and hallucinations. Tr. 572, 576. The ME discussed Plaintiff's other treating physicians, including her primary care physician, Guillermo G. Trevino, M.D. Tr. 573. The ME relayed Dr. Trevino's assessment that Plaintiff's functionality was at a less than sedentary level, but stated that Dr. Trevino did not do an examination that "would allow him to come to any conclusions at all" on the date in question. *Id.* The ME also discussed determinations by other physicians who had treated Plaintiff and classified her capabilities at less than sedentary. *Id*. The ME similarly discounted these determinations as not supported by the medical record. *See* Tr. 572-73.

The ME opined that Plaintiff's symptoms did not meet any Listings, individually or in combination, and opined that Plaintiff is doing well and suffers from no other severe impairments besides Parkinson's. *Id.* Further, he testified that Plaintiff's RFC would allow her to carry twenty pounds occasionally and ten pounds frequently, and that she had no other exertional restrictions. *Id*. Postural restrictions identified by the ME included no climbing or balancing, no unprotected heights, and only occasional fingering with either hand. Tr. 574. Finally, the ME addressed an MRI showing Plaintiff's spinal stenosis.[6] Tr. 575. He testified that an MRI of Plaintiff's cervical spine was performed in 2007 and stenosis was present at that time. *Id*. However, the ME testified that Plaintiff exhibited no functional impairments related to the spinal stenosis diagnosis. *Id.*

---

[6] Spinal stenosis is the "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space; symptoms are caused by compression of the cauda equine and include pain, paresthesias, and neurogenic claudication." *Dorland's Illustrated Medical Dictionary* 1795 (31st ed. 2007).

### D. Vocational Expert Testimony

Vanessa Harris, a vocational expert ("VE"), also testified at the hearing. Tr. 581-83. The ALJ proposed a hypothetical regarding Plaintiff's RFC to the VE. Tr. 582-83. The VE testified as to Plaintiff's prior work as a horticultural worker and confirmed that Plaintiff could no longer perform such work. Tr. 581. The VE was then asked about a hypothetical person of Plaintiff's age, education, and work experience. *Id.* The VE outlined limitations to the hypothetical person's ability to lift; to be on their feet for extended periods of time; to work near moving machinery, around unprotected heights, or other dangerous instrumentalities; as well as an inability to fully use their hands, or have many personal contacts. Tr. 582. The VE concluded that such an individual, like Plaintiff, could perform 4,500 light jobs in the regional economy, including positions as a box sealing inspector, garment sorter, and marker. *Id*.

## II.  APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff

disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner's administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

  4.  Considering the claimant's RFC, can he or she perform his or her past relevant work?

  5.  Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

On appeal, Plaintiff argues the ALJ erred by: (1) rejecting the opinions of her treating physicians; and (2) challenging her disability allegations on credibility grounds. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence, and merits reversal.[7]

**A. The Treating Physician Rule**

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

---

[7] In light of the Court's favorable decision on Plaintiff's argument concerning the weight afforded to her treating physicians, *see infra*, the Court need not determine whether or not the ALJ's credibility assessment is supported by substantial evidence. Nonetheless, having carefully reviewed this claim and recognizing that an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded, *see Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1234 (6th Cir.1993), the Court finds this assignment of error unpersuasive.

*Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treater's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakely*, 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07. When the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Id*. at 407.

As an initial matter, the Court acknowledges that an ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special

significance." 20 C.F.R. § 404.1527; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted).

### B. The ALJ Erred in Rejecting Plaintiff's Treating Physicians' Opinions

In his sparsely worded opinion, the ALJ failed to provide an adequate justification for declining to give controlling or even deferential weight to the opinions of Plaintiff's treating physicians. *See Blakely*, 581 F.3d at 406. The ALJ did not discuss Plaintiff's treating physicians by name, mentioning them only briefly at the end of his assessment, stating: "the record contains several medical source opinions purporting to establish disability on the part of the claimant….However[,] as confirmed by the testimony of Dr. Goren [the ME], those statements are not supported by the objective clinical findings of record." Tr. 34. Beyond this conclusory statement, the ALJ failed to provide any articulable reasons for declining to afford deference to Plaintiff's treating physicians. *See* tr. 31-34. The ALJ stated that "some adjudicative weight is given to the treating source opinions," but that ultimately Plaintiff's treating physicians' opinions were not "entitled to controlling, deferential, or even significant weight as to the ultimate issue of the claimant's disability status." Tr. 34. Aside from a rehashing of the ME's opinion and this statement, the ALJ did not address the factors which must be considered when evaluating the treaters' opinions. *Id*. The ALJ did not discuss, for example, specific instances of treatment by the physicians that Plaintiff regularly visited, or their findings, with any detail. Tr. 33-34. Nor did the ALJ give definitive reasons for his discounting of the treaters' opinions. Tr. 31-34. He merely noted that the regulations provide that an ALJ "is not bound by conclusory statements of

doctors, particularly where they are unsupported by detailed objective criteria and documentation, or are inconsistent with the documentation that does exist." Tr. 34 (citations omitted). The ALJ's failure to explain more "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakely*, 581 F.3d at 407.

The ALJ's opinion is also silent regarding the other 20 C.F.R. § 404.1527 factors—including, *inter alia*, the length of the treatment relationship; the frequency of examination; and the treater's specialization and experience. Although the ALJ listed the factors he was required to consider, he did not apply these factors to the record before him. Tr. 34. Without such analysis, or any significant discussion of Plaintiff's treating physicians, the Court is unable to meaningfully review the ALJ's finding that the treater's opinions are not entitled to deferential or controlling weight. *Accord McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824, at *4 (S.D. Ohio Nov. 15, 2011) (As a rule, the ALJ must build an accurate and logical bridge between the evidence and his [or her] conclusion… When an ALJ fails to mention relevant evidence in his or her decision, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored) (brackets added; internal quotations and citations omitted). The ALJ's failure to meaningfully review the applicable factors deprives the Court of its opportunity to consider whether the ALJ provided "good reasons" for giving less than controlling weight to the findings of Plaintiff's treating physicians. *Blakely*, 581 F.3d at 406-07.

Finally, the ALJ, without good reasons or meical basis for doing so, went beyond the recommendation of Plaintiff's treating physicians and the ME, and improperly made his own RFC finding regarding Plaintiff's ability to lift. Tr. 32. The ME testified that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. *Id*. Dr. Trevino, on the other hand, opined that Plaintiff could lift or carry no more than five pounds at a time, and thus could not

perform sedentary work. Tr. 415, 437. In his decision, the ALJ seemingly adopts the recommendation of the ME, but goes further than the ME's suggestion stating, "given the nature of the claimant's impairments and the weight of the evidence, it is reasonable find [sic] a greater lifting restriction," determining that the Plaintiff should not lift more than ten pounds at a time, as opposed to the ME-recommended twenty pound limitation. Tr. 32. This suggestion is not supported by the record. The Sixth Circuit has previously held that while the ALJ may have some background and expertise, he may not supplant his opinion regarding limitations or abilities for that of a physician. *Hall v. Celebrezze*, 314 F.2d 686, 689 (6th Cir. 1963). The ALJ's assessment of Plaintiff's capabilities cannot serve to replace the recommendations of the treating physician or even a medical expert; this determination must be left to the medical professionals, not to the ALJ. *See also Perkins v. Comm'r of Soc. Sec.*, Case No. 3:12-CV-153, 2013 WL 4518656, at *9 (S.D. Ohio Aug. 26, 2013).

Because the ALJ failed to consider the factors listed in 20 C.F.R. § 404.1527 in determining the weight to give Plaintiff's treating physicians, failed to adequately discuss his discrediting of Plaintiff's treating physicians' opinions, and incorrectly supplanted his own findings for those of Plaintiff's treaters and the ME, the ALJ's non-disability finding is not supported by substantial evidence. *Accord Blakely*, 581 F.3d at 406-07. The ALJ's decision thus warrants reversal under Sentence Four of 42 U.S.C. § 405(g) and remand for reconsideration of Plaintiff's RFC. On remand, the ALJ shall consider anew the medical evidence of record and properly analyze that evidence under the controlling Social Security regulations. Such review of Plaintiff's treating physicians shall apply the good reasons requirement. *See Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2)) ("We will always

give good reasons in our notice of determination or decision for the weight we give [claimant's] treating source's opinion").

## IV.  RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's first assignment of error meritorious, and the ALJ's decision unsupported by substantial evidence.

### IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

November 25, 2013                                             s/ Michael J. Newman
                                                              United States Magistrate Judge

-13-

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).